**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
                                   :
HOZAY A. ROYAL,                    :    Hon. Claire C. Cecchi
                                   :    Civil Action No. 11-4862 (CCC)
            Plaintiff,             :
                                   :
       v.                          :    **O P I N I O N**
                                   :
RUTHERFORD POLICE DEPT. et al.,    :
                                   :
            Defendants.            :
_____:


**CECCHI**, District Judge:

   Plaintiff Hozay A. Royal ("Plaintiff"), an inmate confined at the Montgomery County Correctional Facility, Morris Township, New Jersey, seeks to bring this action in forma pauperis, alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983.

   Plaintiff's civil complaint ("Complaint") arrived unaccompanied by the applicable filing fee of $350 or by Plaintiff's in forma pauperis ("IFP") application. See Docket Entry No. 1. However, it came together with his request for an IFP application, see id., which was duly forwarded to Plaintiff by the Clerk. See Docket Entry No. 2. On September 19, 2011, the Clerk received a letter from Plaintiff; the letter contained a duly executed affidavit of poverty ("Affidavit") and copies of the written exchanges between Plaintiff and his current prison officials; these exchanges

indicated that: (a) Plaintiff made inquiries as to the prison officials' compliance with his prior request to send to the New Jersey Treasury Department the sum of $300; and (b) in response to Plaintiff's request for a certified copy of his six-month prison account statement, Plaintiff was directed to contact the officials of Plaintiff's prior place of confinement, which was located in Bergen County. See Docket Entry No. 3.

Although Plaintiff's request for the mailing of $300 from his prison account causes this Court a certain concern, since such reference might be indicative of Plaintiff's ability to access an amount allowing prepayment of his $350 filing fee, see Adkins v. E. I. DuPont De Nemours & Co., Inc., 335 U.S. 331, 339 (1948), the Court finds it warranted to accept the statement from Plaintiff's current prison officials (showing that Plaintiff's current prison account has no funds) in lieu of Plaintiff's certified prison account statement. Therefore, in light of Plaintiff's Affidavit and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and will order the Clerk to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  **BACKGROUND**

Plaintiff's allegations in this matter read as follows:

> On July 20, 2010, at approximately 3:00 p.m. - 3:30 p.m. in Rutherford, New Jersey, in the back of Lanni's Appliance store; Plaintiff was preparing to receive two (2) televisions. However, before Plaintiff received the televisions he was seized after he ran away, after which, he thought he was being attacked by unidentified Rutherford Police Officers. All of named Defendants in the caption of this case, with the exception of Lt. Feliciano, seized Plaintiff's person without probable cause; seized and searched his vehicle and its contents without a warrant, nor probable cause. Lt. Feliciano, being the ranking police officer on the scene overseen the unlawful actions of all named Defendants actions. Moreover, he announced to the subordinate Defendants to initiate the unconstitutional seizure of Plaintiff's person, and unconstitutional seizure and search of his vehicle and contents.

Docket Entry No. 1, at 5 (capitalization and punctuation, and lack thereof, in original).

The Complaint concludes with Plaintiff's request for relief in the form of $1,000,000.00 in monetary damages from each Defendant, see id. at 6, and names the following entities and persons as Defendants in this matter: (a) Rutherford Police Department; (b) Lt. Patrick Feliciano; (c) Sgt. Anthony Nunziato; (d) Officer Sean Farrell; (e) Officer Michael Garner; and (f) Officer Thomas Lewis. See id. at 1.

II. **STANDARD OF REVIEW**

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89

(2007); Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Indeed, it is long established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, while a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a

Page -4-

> right to relief above the speculative level." Id. at 1965 & n.3. . . . [Indeed, it is not] sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct." Id.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . . demands more than an unadorned the-defendant-unlawfully-harmed-me accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557. . . . A claim has facial plausibility [only] when the plaintiff pleads factual content . . . . Id. at 556. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [,i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn on the controls placed on the discovery process. Twombly, 550 U.S. at 559 . . . . [The plaintiff] is not entitled

> to discovery [where the complaint alleges any of the elements] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope to develop facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

### III. CLAIMS AGAINST THE POLICE DEPARTMENT

Here, Plaintiff named, among Defendants in this action, the Rutherford Police Department.  However, this entity is not cognizable as a "person" subject to suit under 42 U.S.C. § 1983. See Harper v. Franklin & Marshall College, 2011 U.S. Dist. LEXIS 34298, at *11-12 (E.D. Pa. Mar. 30, 2011)("A police department is a sub-unit of the city government and is merely a vehicle through which the city fulfills its policing functions, and [is] therefore not [a] suable entit[y] in Section 1983 actions.") (citing Shilling v. Brush, 2005 U.S. Dist. LEXIS 33912 (M.D. Pa. Aug. 26, 2005), and Stokes v. The Chester County Sheriff's Dept, 1994 U.S. Dist. LEXIS 16895 (E.D. Pa. 1994), and relying on Golya v. Golya, 2007 U.S. Dist. LEXIS 58093 (M.D. Pa. Aug. 9, 2007)); Jones v. Vineland Police Dep't, 2011 U.S. Dist. LEXIS 19671, at *9 (D.N.J. Feb. 28, 2011) (same, relying on Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 688-90 (1978), and Petaway v. City of New Haven Police Dept., 541 F. Supp. 2d 504, 510 (D. Conn. 2008); PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808, 825-26 (D.N.J. 1993), and quoting Monell, 436 U.S. at 694, for the observation that "[e]ven if this Court were to construe this defendant to be the

municipal entity, the City of Vineland, the claim would fail. 'A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983'") (footnote and original brackets removed); accord Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) ("In Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court made explicit what had been implicit in its earlier decisions, namely that a state is not a person within the meaning of § 1983"). Therefore, Plaintiff's claims against this Defendant will be dismissed with prejudice.

**IV.  CLAIMS AGAINST POLICE OFFICERS**

Here, Plaintiff alleges that he was arrested (and his car was searched) without probable cause. In order to determine whether Plaintiff's claims under § 1983 are viable, the Court must "identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 841, n. 5 (1998). Here, Plaintiff's claims arise under the Fourth Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported

> by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV.

The provisions of the Fourth Amendment are applicable to the States by virtue of the Fourteenth Amendment's Due Process Clause. See Cady v. Dombrowski, 413 U.S. 433, 440 (1973). The Fourth Amendment permits an arrest to be made only on the basis of "probable cause." Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972).

> Probable cause "requires more than mere suspicion[.]" Orsatti[ v. New Jersey State Police], 71 F.3d [480,] 482 [ (3d Cir. 1995)]. However, it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972). Rather, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti, 71 F.3d at 483; see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir.2000) ("Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." (citation omitted).). "Probable cause need only exist as to [one of the] offense[s] that could be charged under the circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir.1994). In analyzing whether probable cause existed for an arrest, we must take a "totality-of-the-circumstances approach." Illinois v. Gates, 462 U.S. 213, 230 (1983).

Reedy v. Evanson, 615 F. 3d 197, 211 (3d Cir. 2010).

Thus, in determining whether probable cause existed for an arrest, the court applies an objective standard based on "'the facts available to the officers at the moment of arrest.'" Barna, 42 F.3d

at 819 (quoting Beck v. Ohio, 379 U.S. 89, 96 (1964)); see also Edwards v. City of Phila., 860 F.2d 568, 571 n. 2 (3d Cir. 1988)). Moreover, "[e]vidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law." Id. (citing Henry v. United States, 361 U.S. 98, 102 (1959)); see also Virginia v. Moore, 553 U.S. 164, 171 (2008) ("[w]hen an officer has probable cause to believe a person committed even a minor crime . . . the balancing of private and public interests is not in doubt [and t]he arrest is constitutionally reasonable"). "To find that there was an unlawful arrest in violation of the Fourth Amendment, [it needs to be shown] that, under the facts and circumstances within [the officer's] knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested."[1] Mosley v. Wilson, 102 F.3d 85, 94-95 (3d Cir. 1996); accord Revell v. Port Authority of New York, New Jersey, 598 F. 3d 128, 137 n.16 (3d Cir. 2010). Moreover, "[p]robable cause [does not require] a showing that the officer's belief is more likely true than false." Hughes v. Meyer, 880 F. 2d 967, 969 (7th Cir. 1989). An arrest is deemed constitutional where a reasonable officer could have believed that a criminal offense had been or was being

---

[1] The Fourth Amendment does not require the issuance of an arrest warrant prior to arrest (or imprisonment pursuant to that arrest). Cf. Albright v. Oliver, 510 U.S. 266, 274-75 (1994).

committed.[2]  See Mosley, 102 F.3d at 94-95.

Here, Plaintiff's Complaint paints a picture strongly suggesting that a reasonable officer would have believed that an offense had been or was being committed by Plaintiff: at no point did Plaintiff assert that the officers could have observed him legitimately purchasing the televisions at issue.  In fact, no statement in the Complaint suggests, even vaguely, that he purchased the televisions at all or that he was picking up his own televisions after a repair, or that he was legitimately employed by the store[3] and was picking the

---

[2] The Fourth Amendment protects against unreasonable searches as well as unreasonable seizures.  An officer must have probable cause to perform a lawful warrantless search of a car. See California v. Acevedo, 500 U.S. 565, 569-70 (1991).  Probable cause to conduct a search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949), and Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The Supreme Court has held that several sets of circumstances in which police have probable cause that a vehicle contains evidence of a crime are lawful exceptions to the warrant requirement, including exigency that the vehicle will be moved, see California v. Carney, 471 U.S. 386, 390 (1985) (citations omitted), and search "incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 129 S. Ct. 1710 (2009).  Here, the circumstances asserted by Plaintiff: (a) indicate that his car, if not searched, was likely to be moved: and, in addition (b) suggests that the vehicle was searched in connection with Plaintiff's arrest and on the grounds of Plaintiff's activities observed by police.

[3] Plaintiff's Affidavit indicates that, at the time of the incident at issue, Plaintiff was "unemployed" and recently released from his prior incarceration.  See Docket Entry No. 3, at 4.

televisions up in order to make a delivery to a customer.[4] See Docket Entry No. 1.  Moreover, Plaintiff does not assert that the officers could have observed any interactions between him and the store owners indicative of legitimacy of Plaintiff's actions; indeed, he does not claim that he ever entered the store or that he was in front of the store, where pedestrians, the store owners or the police could observe his legitimate actions.  See id.  Rather, Plaintiff asserts that he situated himself at "the back" of the store and was merely "preparing to receive two(2) televisions." He had his vehicle nearby for the purposes of this unelaborated-upon "receivership."  Id. at 5. Furthermore, Plaintiff states that – when he was about to execute this mysterious "receivership" – he saw police officers approaching and, for the reasons unspecified in the Complaint, he elected to abandon his "receivership"  efforts and tried to run away.  See id.  Simply put, Plaintiff's Complaint paints a picture, which – being observed by a reasonable officer – would have led that officer to believe that Plaintiff was involved (or was about to get involved) in criminal activity.[5]  Therefore, the Complaint, as drafted, *does* allege probable

---

[4] The Court takes note of "Lanni Appliance Center" ("Lanni Appliance") located at 116 Park Avenue, Rutherford, New Jersey 07070.  See <<http://lanniappliances.com/>>.

[5] The fact patterns stated in the Complaint come dangerously close to resembling a scenario typically associated with obtaining stolen goods or acting in conspiracy with another with the goal of stealing goods, or analogous crimes.  Accord <<http://www.northjersey.com/news/118261844_Mother_and_son_charged_with_theft_in_Rutherford.html>> (reporting that "[a] mother and son duo from East Rutherford was arrested on Wednesday, March 16,

cause for Plaintiff's arrest and search of his vehicle.  While the Court could fancy a scenario where, under the circumstances pled by Plaintiff, a reasonable officer observing Plaintiff's activities might still not conclude Plaintiff was involved or about to get involved in a criminal offence, Plaintiff's challenges cannot pass the plausibility requirement set forth in Iqbal.[6]

---

after police caught the two of them allegedly attempting to steal a television from the back of a truck parked in the loading area at Lanni Appliance in Rutherford").

[6] Plaintiff asserted that he was arrested in connection with the incident that took place on June 20, 2010.  In connection with that, the Court takes notice of a news release dated August 12, 2010, which stated:

> Rutherford police officers managed to catch a Philadelphia man who was allegedly using other people's credit cards to purchase electronic equipment in a sting on July 20 in which officers posed as employees at Lanni[] Appliances on Park Avenue. The investigation began when employees of Lanni[] Appliances called police on July 16 to report that a customer calling himself Tom Henson had twice placed orders using a credit card account that was declined.  The first order came on July 12 for a 46-inch Samsung television. After the first card was rejected, "Henson" gave the store a second account that was accepted.  A thin black male in his 50's picked up the television on July 14. Two days later he called back to order two more televisions.  Once again, the first account he used to put down a deposit was declined so he gave a second that was accepted.  At this point, employees at Lanni[] became suspicious and contacted the police that day. On July 19, police contacted the credit card company and found that several of the cards were being used fraudulently.  On July 20, the man called back to pay the rest of the order.  Once again the first card he gave the store was denied but officers told the employees to tell him it was approved.  Rutherford police officers went to Lanni[] Appliances and posed as employees and waited for the man to arrive. According to police, at about 7:30 p.m. a van pulled up and the

> [The required] plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'"

Iqbal, 129 S. Ct. at 1949-50.

Here, Plaintiff's challenges, if construed with a very substantial dollop of imagination, might meet the possibility standard, but they fall short of meeting the plausibility one.

---

> same black male exited and went into the store.  When asked by undercover police the man said he was Tom Henson's nephew, according to police.  He was directed to drive around the corner to Chestnut Street where more officers were waiting.  Detective Tom Lewis approached the man, who was later identified as [Plaintiff].  Lewis identified himself as an officer and ordered [Plaintiff] to surrender.  According to police, [Plaintiff] ran for it and Lewis and Detectives James Garner and Sean Farrell pursued on foot.  The officers caught up with [Plaintiff] as he attempted to scale a fence in the alleyway between 33 and 25 Franklin Place.  Farrell and Garner arrested [Plaintiff] and he was taken into custody.  Police report evidence linking [Plaintiff] to further fraud at other stores was found in the van and the investigation is still ongoing.  [Plaintiff] was charged with three counts of fraudulent use of a credit card, three counts of theft, one count of obstruction and one count of resisting arrest.  Bail was set at $100,000 with not 10 percent option and he was transferred to the Bergen County Jail.  Police say they also discovered that [Plaintiff] was wanted by U. S. Marshals.

<<http://www.northjersey.com/news/100506574_Rutherford_police_use_a_sting_to_make_arrest_at_appliance_store_.html>>.  While the Court has no reason to take this information as true for the purposes of screening Plaintiff's Complaint, the Court notes that, had the scenario depicted in the above-quoted news release been, hypothetically, established as true, police officers would have had abundance of probable cause for both Plaintiff's arrest and search of his vehicle.

Therefore, Plaintiff's instant Complaint should be dismissed for failure to state a claim upon which relief can be granted.

However, this Court – being mindful of Plaintiff's pro se status – cannot rule out that Plaintiff might be able to elaborate on the circumstances of his "receivership" by stating facts showing that a reasonable officer observing Plaintiff's actions could not have believed that an offense had been or was being committed. Therefore, the Court will dismiss Plaintiff's Complaint without prejudice to filing an amended pleading detailing such facts, that is, if such facts were in existence.[7]

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Complaint will be dismissed. Plaintiff's claims not amenable to cure by amendment will be dismissed with prejudice, while the remaining claims will be dismissed with leave to amend.

An appropriate Order accompanies this Opinion.

Date:   November 17, 2011                    s/Claire C. Cecchi
                                             **CLAIRE C. CECCHI,
                                             United States District Judge**

---

[7] The Court takes this opportunity to remind Plaintiff that his amended complaint, as his original Complaint, are documents executed under penalty of perjury and, therefore, these allegations should state facts which Plaintiff believes, in good faith, to be true.